UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **GREG KEMPTON** | **CIVIL ACTION** |
| **VERSUS** | **NO: 12-1383** |
| **MARITIME SYSTEMS, INC., ET AL.** | **SECTION: "N" (4)** |

### ORDER

Before the Court is Plaintiff, Greg Kempton's, ("Kempton") **Motion to Compel Discovery Responses from Defendant Maritime Systems Inc. (R. Doc. 34)**, seeking an Order for the Court compelling Defendant, Maritime Systems, Inc., ("Maritime") to provide more complete responses to its Rule 33 and Rule 34 discovery requests, as well as for "costs for this motion and all other relief provided by Rule 37, other laws and equity." (R. Doc. 34-1, p. 6). Maritime has filed an untimely opposition, (R. Doc. 37) and Kempton has filed a Reply (R. Doc. 42). The motion was noticed for submission on June 12, 2013, and heard on the briefs on that date.

### I.     Background

This is a contract dispute over the proper scope of boat repairs which Maritime performed on Kempton's yacht. Specifically, Kempton alleges that he is the owner of the *Wynken, Blynken, and Nodd*, a 51-foot Gulf Star sailing vessel ("*Wynken*") (R. Doc. 28, p. 2).[1] Kempton alleges that in May 2010 he brought the *Wynken* to Maritime's Slidell, Louisiana boat yard for repairs,

---

[1] Kempton originally filed this action on May 30, 2012. (R. Doc. 1). He duly amended his Complaint on May 16, 2013. (R. Doc. 28). Maritime has not filed an amended Answer to the new Complaint. *See* (R. Doc. 9).

contracting for "certain repairs . . . including repairing keep damage, transducers, and bottom antifouling." *Id.* Kempton alleges that he "specifically limited" the repairs to the above-listed items, and instructed Maritime "not to work on any other parts." *Id.* However, Kempton alleges that when he returned to Maritime's boat yard in August 2011, "he discovered that the engine had been removed, the electrical system had been cut and left exposed, and significant damage had been done to the vessel." *Id.* Kempton alleges that he never contracted for these repairs, and that the total monetary damage to the vessel is unknown at this time. *See id.*

Kempton has sued Maritime, as well as two insurance agencies, for "unauthorized, wrongful, and negligent acts," claiming that he has suffered damages including "loss of use, costs, expenses, and other monetary damages currently estimate at the cost of replacing the vessel, which is upwards of $150,000 or the repairs to the vessel, which are unknown." *Id.* at 3. Kempton also alleges that Maritime breached the duties of care and "warranty of workman like performance" through its misguided repairs of the vessel. *See id.*

In its Answer, Maritime denied liability for the accident, and alleged that on or about June 15, 2011, ownership of the business was transferred. (R. Doc. 9, p. 4). Thereafter, Maritime's new owners attempted to contact Kempton to ascertain the scope of requested repairs, but received no response. *Id.* After Kempton failed to respond, Maritime began assessing storage fees against him at the rate of $2.00 per day. *Id.* at 5. Maritime has counterclaimed for the storage fees, as well as attorney's fees and other costs. *Id.*

As to the instant motion, Kempton argues that on April 8, 2013, he propounded Interrogatories and Requests for Production of Documents upon Maritime, to which Maritime responded on May 9, 2013. (R. Doc. 34-1, p. 3). Kempton argues that the responses received are inadequate, and has moved for more complete responses. *Id.* The motion, which also requests

attorney's fees, was not timely opposed. Kempton has filed a Reply.

**II.     Standard of Review**

Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." Rule 26(b)(1). The Rule specifies that "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* The discovery rules are accorded broad and liberal treatment to achieve their purpose of adequately informing litigants in civil trials. *Herbert v. Lando*, 441 U.S. 153, 177 (1979). Nevertheless, discovery does have "ultimate and necessary boundaries." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)). Further, it is well established that "control of discovery is committed to the sound discretion of the trial court . . ." *Freeman v. United States*, 556 F.3d 326, 341 (5th Cir. 2009); *Coleman v. Am. Red Cross*, 23 F.3d 1091, 1096 (6th Cir. 1994).

Under Rule 26(b)(2)(c), discovery may be limited if: (1) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from another, more convenient, less burdensome, or less expensive source; (2) the party seeking discovery has had ample opportunity to obtain the discovery sought; or (3) the burden or expense of the proposed discovery outweighs its likely benefit. Rule 26(b)(2)(C). In assessing whether the burden of the discovery outweighs its benefit, a court must consider: (1) the needs of the case; (2) the amount in controversy; (3) the parties' resources; (4) the importance of the issues at stake in the litigation; and (5) the importance of the proposed discovery in resolving the issues. *Id.* at 26(b)(2)(C)(iii).

Rule 33 provides that a party may request another party to respond to up to 25 written

interrogatories, including discrete subparts. Rule 33(a)(1).[2]  "The responding party must serve its answers and any objections within 30 days after being served with the interrogatories." *Id.* at (b)(2). "Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath. . . . The grounds for objecting to an interrogatory must be stated with specificity." *Id.* at (b)(3)-(4).

Rule 34 further provides that a party may request another party to produce "any designated documents or electronically stored information . . . stored in any medium from which information can be obtained." *Id.* at 34(a)(1)(A). This request "must describe with reasonable particularity each item or category of items to be inspected." *Id.* at (b)(1)(A). "For each item or category, the response must either state that inspection . . . will be permitted as requested or state an objection to the request, including the reasons." *Id.* at (b)(2)(B).

Under Rule 37, "[a] party seeking discovery may move for an order compelling an answer, designation, production, or inspection. This motion may be made if: . . . (iii) a party fails to answer an interrogatory submitted under Rule 33, or (iv) a party fails to respond that inspection will be permitted - or fails to permit inspection - as requested under Rule 34." *Id.* at 37(a)(3)(B). Additionally, "[i]f the motion is granted - or if the . . . requested discovery is provided after the motion was filed - the court must, after giving an opportunity to be heard, require the party . . . whose conduct necessitated the motion . . . to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." *Id.* at 37(a)(5)(A).

---

[2]Under the "discrete subparts" rule, "the court retains discretion to decline to compel requested discovery when the request far exceeds the bounds of fair discovery, even if a timely objection has not been made." *Amir Athletic, LLC v. State Farm First and Casualty Co.*, No. 11-2082, 2012 WL 520658, at *2 (E.D. La. Feb. 16, 2012). In this case, Kempton has propounded 18 Interrogatories upon Maritime, and the Court finds that consideration of each of the Interrogatories would not "exceed the boundaries of fair discovery," and thus all Interrogatories can be considered.

**III.    Analysis**

In support of his motion, Kempton argues that on April 8, 2013, he propounded Interrogatories and Requests for Production of Documents upon Maritime. (R. Doc. 34-1, p. 3). Maritime responded to these requests on May 9, 2013. *Id.*[3] Kempton then communicated with Maritime via letter on May 20, 2013, stating that "I've tried setting up a phone call with you pursuant to Local Rule 26 but we have not been successful in discussing the [discovery requests] that have incomplete answers. We also request a signed verification." (R. Doc. 34-3, p. 1). The letter, after detailing the deficiency issues,[4] stated that "[i]f we cannot resolve these by close of business tomorrow I will have to file a motion to compel to preserve our client's rights." *Id.* at 3. On March 28, 2013, Kempton filed the instant motion.

In his Reply, Kempton argues that Maritime provided some supplemental discovery responses on June 7, 2013, although he also argued, without further specificity, that several of Maritime's responses were still defective. (R. Doc. 42, p. 1).

**A.    Whether the Motion Is Opposed**

The first issue is whether the Court should consider Maritime's Opposition (R. Doc. 37). Maritime attempted to file this Opposition on June 7, 2013, five days prior to the June 12, 2013 submission date for Kempton's Motion to Compel. Maritime never sought leave to file this document. In his Reply, Kempton argues that the Court should disregard the Opposition as untimely. (R. Doc. 42, p. 1). According to Local Rule 7.5, all motions in opposition must be filed "no later than eight days before the noticed submission date." *Id.* Therefore, the Court finds that

---

[3]Although Kempton claims that Maritime's responses were "deficient and non-responsive," he does not argue that they were either untimely, or request that any objections thereto have been waived.

[4]The Court notes that Kempton's Motion appears to have been copied from its May 20, 2013 letter to Maritime. *See* (R. Docs. 34-2, 34-3). For example, the arguments made in support of each discovery request refer to Maritime not in the third person, but as "you." Moreover, the language used in the two documents is identical.

5

Maritime's Opposition was filed in contravention of the rule, it is not appropriately considered, and Kempton's motion is properly construed as unopposed. Kempton's "Reply," however, was properly presented to the Court in the form of a motion for leave to file, and thus it is properly considered.

### B. Request for Certification

In support of his motion, Kempton argues that Maritime's responses were deficient in part because Maritime failed to sign its responses to either Kempton's Rule 33 or Rule 34 discovery requests, or otherwise verify that his answers were true and correct. *See* (R. Doc. 34-2, p. 3).

Under Rule 26(g), "[e]very discovery request, *response*, or objection must be signed by at least one attorney of record in the attorney's own name . . . ." *Id.* at 26(g)(1). By signing a discovery request, an attorney certifies that to the best of the attorney's knowledge, information, and belief, the response or objection is "consistent with these rules and warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law, or for establishing new law." *Id.* at 26(g)(1)(B). "The duty under Rule 26(g) is similar to the duty under Rule 11 to make a reasonable inquiry into the factual basis of a response." *Howell v. Avante Services, LLC*, No. 12-293, 2013 WL 824715, at *3 (E.D. La. Mar. 6, 2013).

Consequently, "[o]ther parties have no duty to act on an unsigned . . . response . . . until it is signed, and the court must strike it unless a signature is promptly supplies after the omission is called to the attorney's or party's attention." *Id.* at 26(g)(2). Most courts strictly adhere to the signature requirement. *See, e.g.*, *Salesman v. Access Systems Americas, Inc.*, 2010 WL 3743765, at *3 (N.D. Cal. Sept. 17, 2010) (finding that party's typed name on a disclosure request failed to meet 26(g) signature requirement); *Lock Realty Corp. v. U.S. Health L.P.*, 2008 WL 4372411, at *2 (N.D. Ind. Sept. 22, 2008) (finding that a party may move to strike a discovery *response* on grounds that the response was unsigned). "If a certification violates this Rule without substantial

justification, the court, on motion or on its own, must impose an appropriate sanction on the signer . . . ." Rule 26(g)(3).

Here, Maritime's May 9, 2013 responses to both Kempton's Rule 33 and 34 discovery requests are unsigned. (R. Doc. 34-2, pp. 21, 24). Kempton notified Maritime of this failure in its May 20, 2013, letter. (R. Doc. 34-2). There is no indication that Maritime ever supplemented its responses to include signatures. Kempton argued in its Reply that on June 7, 2013, he received an undefined supplemental discovery production from Maritime, and that this supplementation was "not verified." (R. Doc. 42, p. 1).

The plain language of Rule 26(g) does not specify when discovery responses are considered "prompt" or otherwise. The Court notes that other circumstances could exist where a party's failure to supplement in a similar time period would not in fact be "prompt." Here, however, the Court declines to take the draconian step of striking all of Maritime's responses. Instead, the Court orders Maritime to supplement its responses to all of Kempton's April 8, 2013 discovery by submitting signed copies of the same no later than seven (7) days after the issuance of this written Order. Because Rule 26(g) imposes an affirmative obligation on a party responding to discovery, Maritime must certify its responses to *all* of Kempton's April 8, 2013 requests, regardless whether the requests are specifically raised in Kempton's motion to compel. Any failure to do so will obligate the Court to strike Maritime's responses pursuant to Rule 26(g)(2).

### C. <u>Specific Discovery Responses</u>

In the body of its motion, Kempton specifically raises the following discovery requests as points of contention: Request for Production Nos. 2, 4, 5, 7, 12, and 14; and Interrogatories Nos. 3, 4, 12, 13, 15, and 18. (R. Doc. 34-1, pp. 3-6). Although Kempton's Reply does specify that he had "received revised and supplemental discovery from [Maritime] on Friday, June 7," he argues that

7

several of the responses remain inadequate. (R. Doc. 42, p. 1). Because Kempton does not specify which responses remain inadequate, each of his outstanding discovery requests, and Maritime's responses, must be addressed in turn.

### 1. Requests for Production

#### a. Request for Production No. 2

**REQUEST FOR PRODUCTION NO. 2:**
Please produce all correspondence between you and Jeff Miley, including but not limited to faxes and e-mails, regarding the plaintiff's vessel, Wynken, Blynken and Nodd.

**RESPONSE TO REQUEST 2:**
Respondent does not possess any of the requested documentation.

(R. Doc. 34-2, pp. 13, 22). In support of the Motion, Kempton argues that Maritime's response, which states that it "did not possess any of the requested documentation," implies that such documentation actually exists. (R. Doc. 34-1, p. 3). Therefore, Kempton requested that the Maritime either (1) certify that it does not exist, or (2) why, if it in fact existed, Maritime had no copies of the same.

Simply because Maritime "does not possess" information is not an implication that such material in fact exists. Further, although Maritime admits later in discovery that it has in its possession a single invoice which indicates that "Jeff Miley" was working on the *Wynken*'s engine, this note is not properly classified as "correspondence." As such, Kempton's motion to compel a supplemental response to Request for Production No. 2 is denied.

#### b. Request for Production No. 4

**REQUEST FOR PRODUCTION NO. 4:**
Please produce any and all photographs, videos, and surveys related to the plaintiff's vessel, Wynken, Blynken and Nodd, which are in your possession, custody and control, or any and all photographs, videos, surveys which you have commissioned third parties to conduct of the vessel that is the subject of this action.

**RESPONSE TO REQUEST 4:**
All photographs of the plaintiff's vessel have previously been provided to

plaintiff's counsel.

(R. Doc. 34-2, pp. 13, 22). In support of its motion, Kempton argues that although some photographs had been provided at a deposition as attachments, "several photos were apparently not attached and it is unclear as to which are which." (R. Doc. 34-1, p. 3). As such, Kempton requested that the photographs be re-submitted, with bates numbers. *Id.*

The Court notes that Kempton's written request did not specify that the information request be bates-stamped; indeed, given that the request included "videos," such stamping might pose logistical difficulties. Further, Kempton has not specified how the documentation was "unclear" in any of its communications with Maritime. Maritime is not obligated to respond to a request which fails to adequately request documents in a particular form, or a request for supplementation to which it must guess at Kempton's meaning. As such, Kempton's motion to compel a supplemental response to Request for Production No. 4 is denied.

### c. Request for Production No. 5

**REQUEST FOR PRODUCTION NO. 5:**
Please produce any and all documents, including but not limited to stock sales agreements or agreements to purchase, including any indemnification agreements and insurance policies related to sales agreements, which transfer ownership and control of Maritime Systems, Inc. within the last ten (10) years.

**RESPONSE TO REQUEST 5:**
Objection. The information sought is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

(R. Doc. 34-2, pp. 13, 23). In support of its motion, Kempton argues that Maritime's current owners have told him, both in writing and verbally, that Maritime is not liable to him because "any issues with your vessel that occurred before June 9 [2012]," i.e., the date of ownership transfer, were the responsibility of the company's prior owners. (R. Doc. 34-1, p. 4).

In its Answer, Maritime explicitly alleges that the repairs which Kempton authorized were completed prior to the transfer of ownership on or about June 15, 2011. (R. Doc. 9, p. 4). Maritime

9

also alleges that it was only after this time that the new owners of Maritime discovered that the *Wynken* was in the company's boat yard, and attempted to contact Kempton "to address the issues to complete whatever work needed to be done." *Id.*

Since the time at which the *Wynken*'s engine work was performed is unknown, the issues regarding ownership transfer, and what the new owners "knew" or had reason to know about the company's prior business operations, are material to the claims and defenses of this lawsuit. Requests for information related to the transfer of ownership are therefore reasonably calculated to lead to the discovery of admissible evidence. Therefore, the Court overrules Maritime's relevancy objection, and orders it to produce documents responsive to Request for Production No. 5 no later than seven (7) days after the issuance of this Order.

### d. Request for Production No. 7

**REQUEST FOR PRODUCTION NO. 7:**
Please produce any and all records and documents related to the removal and storage of the engine of the plaintiff's vessel, Wynken Blynken and Nodd, while the vessel was in your control and possession.

**RESPONSE TO REQUEST 7:**
To respondent's knowledge, no such specific documents exist.

(R. Doc. 34-2, pp. 13, 23). In support of his motion, Kempton argues that Maritime's response, which states that no "specific" documents exist, is vague because "there may be some general documents that exist, such as a contract with a third party storage facility for engines or other parts of the vessel." (R. Doc. 34-1, p. 4).

The Court finds that Maritime's response to this request was inadequate. The documents requested were not "specific to" the removal and storage of the *Wynken*'s engine, but documents "related to" those activities. Documents within the proper scope of this discovery request could in fact include, *but are not limited to*, third party storage contracts. Therefore, the Court orders Maritime to

produce documents responsive to Request for Production No. 7 no later than seven (7) days after the issuance of this Order.

### e. Request for Production No. 12

**REQUEST FOR PRODUCTION NO. 12:**
Please produce an[y] and all documents that you have supplied any expert that you have consulted and/or retained relative to the referenced matter.

**RESPONSE TO REQUEST 12:**
This information has already been produced.

(R. Doc. 34-2, pp. 14, 23). In support of his motion, Kempton argues that Maritime has not identified which documents, among those produced, were responsive to this request. Moreover, Maritime has not produced a copy of the "expert witness" CV or prior trial testimony, which it argues it is entitled to receive prior to the expert's deposition.

As to production of "the" expert's CV and trial testimony, the Court notes that Kempton's argument expands the plain language of the Request as written, which pertains only to information which was "supplied."[5] As such, Maritime's answer to Request for Production No. 12 is adequate, and Kempton's Motion to Compel is denied.

### f. Request for Production No. 14

**REQUEST FOR PRODUCTION NO. 14:**
Please produce a certified copy of each and every policy of insurance, or other insurance documentation, setting forth each type of insurance which affords coverage for liability of the nature asserted by the plaintiff against you, including all primary coverage and all excess or umbrella coverage.

**RESPONSE TO REQUEST 14:**
This document has been requested and will be forwarded upon receipt.

---

[5]The Court also notes that although Request for Production No. 12 pertained to "any" expert, Kempton's motion refers to "the" expert without further specifying who the "expert" in question is. Without this information, it is impossible for the Court to evaluate whether it would have been reasonable for Maritime to identify the documents "responsive" to this request. In any event, it would have been the *expert* who would have "supplied" Maritime with a CV and a list of prior trial testimony, not Maritime.

11

(R. Doc. 34-2, pp. 14, 23).  In support of his motion, Kempton argues that although Maritime has promised to produce these policies, as of the date the motion was filed over 30 days had elapsed, which should have been sufficient time to obtain the same.  (R. Doc. 34-1, p. 4).  The Court finds that as of the date of issuance of this Order, Maritime has had more than 60 days to procure and produce such policies.  It now orders Maritime to fully respond with Kempton's Request for Production No. 14 no later than seven (7) days after the issuance of this Order.

### 2. Interrogatories

#### a. Interrogatory No. 3

**INTERROGATORY NO. 3:**
Give the name, social security number, last known residence address, last known telephone number, and name and address of last known employer of each and every person having knowledge or relevant facts and who may reasonably be called as a witness for any party, the subject matter on which each such person is or could be reasonably expected to testify, and the substance of each said person's testimony.  This includes, but is not limited to, any impeachment witnesses.
(R. Doc. 34-2, pp. 4-5)**.**

**ANSWER TO INTERROGATORY NO. 3:**
Please see Answer to Interrogatory 2.

(R. Doc. 34-2, p. 17).  Maritime's Answer to Interrogatory No. 2 included the names and addresses of two employees: "Shannon Adkisson" and Mark Tuper," and also included names, of former owners/employees of Maritime, along with the designation "current address unknonwn"): Bryan Marshall, Paul Dumstorf, Barbara O'Brien, Johnnie Young, Glenn Sylvas, and Ryan Adams.  *Id.* at 16-17.  Maritime's Answer also included "Jeff Miley," an individual whose affiliation with Maritime was left undisclosed, as was his address.  No social security numbers were provided for any individuals.

In support of its motion, Kempton requests that Maritime supplement its discovery responses to provide a summary of any testimony these witnesses anticipate providing.  (R. Doc. 34-1, pp. 3-5).

Kempton also argues that this information was not provided in Maritime's initial disclosures. *Id.* at 3-4. Notably, Kempton fails to raise the issue of whether Maritime has properly responded to his request insofar as that request pertained to the addresses, social security numbers, or other identifying information. *See* (R. Doc. 34-1, pp. 3-5). Instead, in his argument in support of Interrogatory No. 12, Kempton agues that "plaintiff requested contact information for former employees . . . Maritime Systems could easily provide the last known addresses and phone numbers." *Id.* at 5.

The Court finds that Kempton's failure to re-urge Interrogatory No. 3 as it pertained to addresses, social security numbers, or other identifying information of the listed persons would normally operate as a waiver of the same. It is clear, however, that Kempton requested, and then re-urged, its entitlement to the "last known addresses and phone numbers" of these individuals. (R. Doc. 34-1, p. 5). Moreover, it is clear that Maritime failed to provide any information regarding anticipated testimony of these potential witnesses, although Kempton clearly requested this information and re-urged the same.

The Court orders Maritime to supplement its response to Kempton's Interrogatory No. 3 to provide a summary of anticipated testimony for each of the individuals listed in its response to Kempton's Interrogatory No. 2. The Court also orders Maritime to supplement its response to Kempton's Interrogatory No. 3 to provide a list of the last known addresses and telephone numbers of these individuals. Maritime shall supplement its responses to this Interrogatory no later than seven (7) days after the issuance of this Order. The Motion to Compel Maritime's response to Interrogatory No. 3 is otherwise denied.

      **b.**      **Interrogatory No. 4**

**INTERROGATORY NO. 4:**
      Do you or any representative of yours have any photographs, videos, or motion pictures pertaining to any fact or issue set forth in the plaintiff's Complaint? If your answer is "yes", please state the number of photographs, videos, and/or motion

13

pictures, a general description of their contents, the name and address of the photographer, the date of the photographs and/or motion pictures were taken, and the name and address of the present custodian of the photographs and/or motion picture.

**ANSWER TO INTERROGATORY 4:**
Yes. All photographs of the vessel in question have previously been provided.

(R. Doc. 34-2, p. 17). In connection with Request for Production No. 4, Kempton argues that no information regarding the number of photographs, a general description of each, the identity and address of the photographer, and the date the picture was taken, was supplied along with Maritime's response. (R. Doc. 34-1, pp. 3-4).

The Court finds that the "background" information of any photographs is important in the context of the instant suit, especially considering that Maritime alleges in its Answer that it changed ownership while the *Wynken* was in its boat yard, and its responses in discovery that a third party, Jeff Miley, had performed the engine repair to the *Wynken* at Kempton's direction. Therefore, the Court orders Maritime to supplement its response to Kempton's Interrogatory No. 4 in full no later than seven (7) days after the issuance of this Order.

   **c.**  **Interrogatory No. 12**

**INTERROGATORY NO. 12:**
Please state with as much detail as possible how and why the engine of the S.V. Wynken, Blynken and Nodd was removed, including any and all people involved in removing the engine, any equipment owned, operated or in the control of you which was involved in the removal, and by what orders or authority these people were acting. Please give the time of day, date and place of these events.

**ANSWER TO INTERROGATORY 12:**
Objection. It is respondent's belief that the engine in question was actually removed by Jeff Miley, who is not an employee of Maritime Systems, Inc., the details of the engine removal of the plaintiff's vessel is unknown. However, on information and belief, Johnnie Young assisted in the removal of the engine, by utilizing a crane owned by Maritime Systems, Inc. Under whose authority or orders Mr. Young was acting is unclear. Please see work order details regarding same attached in these discovery responses.
  Please note that none of the employees who were present at the time plaintiff's vessel was brought to Maritime Systems, Inc. and which were present during the

> performance of any work at all on the vessel, including the engine, are no longer employed by Maritime Systems, Inc.

(R. Doc. 34-2, pp. 7-8, 19-20). In support of his motion, Kempton argues that Maritime's objection fails to articulate a cognizable basis. (R. Doc. 34-1, p. 5). Kempton further argues that the explanation which Maritime provided was not credible. *Id.* Specifically, Kempton argues that although it requested an explanation for *why* the engine was removed from the *Wynken*, Maritime asserted that it did not *know* why the engine had been removed. *Id.*

The Court finds that although Maritime's "objection" would be overruled for failing to state an appropriate legal basis, it is instead moot because Maritime fully answered the question posed. Kempton's Motion to Compel Maritime's response to Interrogatory No. 12 is denied.

### d.      Interrogatory No. 13

> **INTERROGATORY NO. 13:**
> Please identify any third party, whether a party to this suit or not, who you believe was a cause of the damages of injury complained of in the plaintiff's Complaint. For each such third party, please state his full name, last known address, and telephone numbers.
>
> **ANSWER TO INTERROGATORY 13:**
> On information and belief, Jeff Miley is responsible for any damage alleged by plaintiff, as Mr. Miley was retained directly by plaintiff for the engine removal.

(R. Doc. 34-2, pp. 8, 20). In support of his motion, Kempton argues that Maritime "does not provide any documentation, or the identity of any witnesses, to support [the] assertion" that Miley was retained by Kempton to remove the engine. (R. Doc. 34-1, p. 5).

The Court notes that Kempton's request asked for the identity of persons, not production of documents; the Court has already ordered Maritime to provide Miley's last known address and telephone number in connection with Interrogatory No. 3. Kempton's motion to expand his Interrogatory to include "documentation" is neither reflected in the plain language of the Interrogatory, nor is an Interrogatory the proper discovery vehicle under which to obtain "documentation."

15

Kempton's Motion to Compel Maritime's response to Interrogatory No. 13 is denied.

### e. Interrogatory No. 15

**INTERROGATORY NO. 15:**
With respect to each and every affirmative defense pled in your Answer to plaintiff's Complaint, please identify each and every document, item and/or thing, being the result of your "reasonable inquiry" which led you to plead any affirmative defenses.

**ANSWER TO INTERROGATORY 15:**
N/A.

(R. Doc. 34-2, pp. 8, 21). In support of his motion, Kempton argues that if Maritime's response is in fact "N/A," it should supplement its discovery request to certify that this is true, and that the Court Order that based on this response, Maritime "does not have any affirmative defenses." (R. Doc. 34-1, p. 5).

The Court finds that the assertion of "N/A" over this response was appropriate in context. As such, Kempton's Motion to Compel Maritime's response to Interrogatory No. 15 is denied.

### f. Interrogatory No. 18

**INTERROGATORY NO. 18:**
Explain why or how you allowed the engine of the plaintiff's vessel to be removed while the vessel was in your custody, possession and control. If you are asserting that you have any written documents, including orders and instructions allowing you to do so, please list and produce copies of any written orders or instructions[.]

**ANSWER TO INTERROGATORY 18:**
Objection to the Interrogatory as presented. On information and belief, the engine was removed by Jeff Miley at the specific request of the plaintiff. The only written document respondent has to verify this is the hand written notation on Maritime Systems, Inc.'s invoice indicating "Jeff Miley working on engine."

(R. Doc. 34-2, pp. 9, 21). In support of his motion, Kempton argues that Maritime's objection to the Interrogatory "as presented" is unclear, and that Maritime should be obligated to "state a more full response and identify what information it may be withholding, or explain the basis of its objection."

(R. Doc. 34-1, pp. 5-6).

The Court finds that Maritime's response to Interrogatory No. 18 was adequate because Maritime in fact named a "document" related to "this" Interrogatory: i.e., a Maritime invoice containing a hand-written notation that Miley was working on the engine. The Court finds that to the degree the Interrogatory requested that Maritime "produce" any documents, an Interrogatory is an improper discovery vehicle for securing the same. As such, Kempton's Motion to Compel Interrogatory No. 18 is denied.

### C. Attorney's Fees

As noted above, Kempton has sought "costs for this motion and all other relief provided by Rule 37, other laws and equity." (R. Doc. 34-1, p. 6). The Court notes, however, that Kempton's discovery requests were granted in part and denied in part. As such, the Court has discretion to apportion attorney's fees and costs under Rule 37(a)(5)(C). The Court exercises its discretion and declines to award fees in this instance.[6]

### IV. Conclusion

Accordingly,

**IT IS ORDERED** that Plaintiff, Greg Kempton's, ("Kempton") **Motion to Compel Discovery Responses from Defendant Maritime Systems Inc. (R. Doc. 34)** is **GRANTED** in part and **DENIED** in part.

It is **GRANTED** as to Requests for Production Nos. 5, 7, 14, and Interrogatory No. 4. Defendant, Maritime Systems, Inc., ("Maritime") shall supplement its responses to these discovery requests no later than seven (7) days after the issuance of this Order. All objections asserted by

---

[6]Moreover, Maritime's failure to sign its original discovery responses, without more, does not warrant sanctions under the plain language of Rule 26(g)(3), as this Rule pertains only to violations of "a" certification, not circumstances in which there is a complete absence of certification.

17

Maritime in connection with these requests are overruled.

It is **GRANTED** in part and **DENIED** in part as to Interrogatory No. 3.  Maritime shall supplement its response this Interrogatory to provide a summary of anticipated testimony for each of the individuals listed in its response to Kempton's Interrogatory No. 2, as well as the last known addresses and phone numbers of those individuals, no later than seven (7) days after the issuance of this Order.  Interrogatory No. 3 is otherwise denied.

It is **DENIED** as to Requests for Production Nos. 2, 4, 12, and Interrogatories Nos. 12, 13, 15, 18.

It is **DENIED** as to attorney's fees, costs, and other expenses arising in connection with Kempton's filing of the instant motion.

**IT IS FURTHER ORDERED** that Maritime shall supplement its responses to all of Kempton's April 8, 2013 discovery requests to comply with Rule 26(g) by providing signed copies of the same.  Kempton shall do so **no later than seven (7) days** after the issuance of this Order.

New Orleans, Louisiana, this 17th day of June 2013.

                                         **KAREN WELLS ROBY**
                                **UNITED STATES MAGISTRATE JUDGE**